JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

16-CV-6395

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Laborers International Union of North America Local 35 Health Care Fund,

## DEFENDANTS

Teva Pharmaceuticals USA, Inc., et al.

**16   6395**

**(b)** County of Residence of First Listed Plaintiff   Oneida County, NY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Brent W. Landau
Hausfeld LLP, 325 Chesnut St., Suite 900, Philadelphia PA 19106
215.985.3270 (t) 215.985.2371 (f)

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ❏ 1   U.S. Government Plaintiff | ☒ 3   Federal Question *(U.S. Government Not a Party)* |
| ❏ 2   U.S. Government Defendant | ❏ 4   Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                        *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ Pharmaceutical | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☒ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ❏ 840 Trademark | ❏ 460 Deportation |
| | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | | | ❏ 790 Other Labor Litigation | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | | | ❏ 791 Employee Retirement Income Security Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ❏ 893 Environmental Matters |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 895 Freedom of Information Act |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 896 Arbitration |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1   Original Proceeding | ❏ 2   Removed from State Court | ❏ 3   Remanded from Appellate Court | ❏ 4   Reinstated or Reopened | ❏ 5   Transferred from Another District *(specify)* | ❏ 6   Multidistrict Litigation - Transfer | ❏ 8   Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. Sections 1 & 3; and various state statutes authorizing indirect purchaser antitrust claims

Brief description of cause:
Antitrust class action case for price-fixing

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE   Thomas N. Oneill, Jr.   DOCKET NUMBER   2:16-cv-5056; 2:16-cv-6321

DATE
12/12/2016

SIGNATURE OF ATTORNEY OF RECORD
Brent W Landau

## FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

# UNITED STATES DISTRICT COURT

**16   6395**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 112 SOUTH STREET, UTICA, NEW YORK 13501

Address of Defendant: SEE ADDENDUM A

Place of Accident, Incident or Transaction: NEW YORK AND OTHER STATES WHERE REIMBURSEMENT WAS SENT FOR PRICE-FIXED PRODUCTS
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☑   PLAINTIFF ONLY

Does this case involve multidistrict litigation possibilities?   Yes☑   No☐

*RELATED CASE, IF ANY:*

Case Number: 2:16-cv-5056   Judge THOMAS N. OUELL, JR   Date Terminated: N/A
2:16-cv-6321

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☑   No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☑

---

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☒ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

---

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, BRENT W LANDAU , counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought.

DATE: 12/12/16   *Brent W Landau*   202189
Attorney-at-Law   Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/12/16   *Brent W Landau*   202189
Attorney-at-Law   Attorney I.D.#

CIV. 609 (5/2012)

**Addendum A**

**Addresses of the Defendants**

| | |
|---|---|
| Teva Pharmaceuticals USA, Inc. | 425 Privet Rd.<br>Horsham, PA 19044 |
| Mylan, Inc. | 405 Lexington Ave., No. 52,<br>New York, NY 10174 |
| Glenmark Pharmaceuticals USA, Inc. | 750 Corporate Dr.<br>Mahwah, NJ 07430 |
| Apotex, Inc. | 2400 North Commerce Parkway, Suite 400<br>Weston, FL 33326 |
| Sandoz, Inc. | 100 College Rd W.<br>Princeton, NJ 08540 |
| Lek Pharmaceuticals, d.d. | Verovskova, 57<br>1526 Ljubljana |
| Dr. Reddy's Laboratories, Inc. | 107 College Rd E,<br>Princeton, NJ 08540 |
| Lupin Pharmaceuticals, Inc. | 111 S Calvert St., No. 2150<br>Baltimore, MD 21202 |
| Lupin, Ltd. | B/4 Laxmi Towers<br>Bandra Kurla Complex, Bandra (E)<br>Mumbai 400 051 India |
| Cadila Healthcare, Ltd. | Zydus Tower, Satellite Cross Roads<br>Ahmedabad Gujarat, 380015 India |
| Actavis Holdco, U.S., Inc. | Morris Corporate Center III<br>400 Interpace Parkway<br>Parsippany, NJ 07054 |
| Zydus Pharmaceuticals (USA), Inc. | 73 NJ-31<br>Pennington, NJ 08534 |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

LABORERS INTERNATIONAL UNION
OF NORTH AMERICA LOCAL 35
HEALTH CARE FUND V.
:
:
:
:
TEVA PHARMACEUTICALS USA, INC. :

CIVIL ACTION

NO. 16 6395

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.            ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
   and Human Services denying plaintiff Social Security Benefits.                   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
   exposure to asbestos.                                                            ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
   commonly referred to as complex and that need special or intense management by
   the court. (See reverse side of this form for a detailed explanation of special
   management cases.)                                                              (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( )

| 12/12/16 | BRENT W. LANDAU | LABORERS INTERNATIONAL UNION |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215.985.3270 | 215.985.3271 | BLANDAU@HAUSFELD.COM |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Laborers International Union of North America Local 35 Health Care Fund, on behalf of itself and all others similarly situated, | ) ) ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) ) | **CLASS ACTION COMPLAINT** |
| v. | ) ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Teva Pharmaceuticals USA, Inc., Mylan, Inc., Glenmark Pharmaceuticals USA, Inc., Apotex, Inc., Sandoz, Inc., Lek Pharmaceuticals, d.d., Dr. Reddy's Laboratories, Inc., Lupin Pharmaceuticals, Inc., Lupin, Ltd., Cadila Healthcare, Ltd., Actavis Holdco, U.S., Inc., and Zydus Pharmaceuticals (USA), Inc., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## INTRODUCTION

Plaintiff Laborers' International Union of North America, Local 35 Health Care Fund

("LIUNA Local 35" or "Plaintiff") brings this action both individually and on behalf of (a) a

national injunctive class of persons or entities in the United States and its territories who

purchased, paid and/or provided reimbursement for some or all of the purchase price of generic

pravastatin sodium products manufactured and/or distributed by Defendants during the period

from June 1, 2013 to the present and (b) a damage class of persons or entities who purchased,

paid and/or provided reimbursement for some or all of the purchase price of generic pravastatin

sodium products manufactured and/or distributed by Defendants during the period from June 1,

2013 to the present in the 31 states identified herein and the District of Columbia. Defendants

are accused of engaging in a conspiracy to fix, maintain, and/or stabilize the prices of generic

1

pravastatin sodium drug products. All allegations herein are based on information and belief, except for those relating to the Plaintiff.

2.     The claims in this case arise from a broad conspiracy among manufacturers and/or distributors of generic drugs to fix the prices charged for those drugs in recent years. The conspiracy appears to have been effectuated by direct company-to-company contacts among generic drug manufacturers, as well as joint activities undertaken through trade associations such as the Generic Pharmaceutical Association ("GPhA"). The unlawful acts undertaken with respect to generic pravastatin sodium are merely two manifestations of that overall conspiracy. The Antitrust Division of the United States Department of Justice ("DOJ") commenced in 2014 a wide-ranging criminal investigation of this broad conspiracy and has caused grand jury subpoenas to be issued to various Defendants in connection with this investigation. The investigation encompasses generic drugs other than pravastatin. According to a June 26, 2015 report by the service Policy and Regulatory Report ("PaRR Report") (available at http://www.mergermarket.com/pdf/DoJ-Collusion-Generic-Drug-Prices-2015.pdf):

> A PaRR source says prosecutors see the case much like its antitrust probe of the auto parts industry, which has gone on for years and morphed into the department's largest criminal antitrust probe ever. Like in that case, prosecutors expect "to move from one drug to another in a similar cascading fashion."

3.     Most recently, on November 3, 2016, Bloomberg reported:

> The antitrust investigation by the Justice Department, begun about two years ago, now spans more than a dozen companies and about two dozen drugs, according to people familiar with the matter. The grand jury probe is examining whether some executives agreed with one another to raise prices, and the first charges could emerge by the end of the year, they said.
>
> *****
>
> Charges could extend to high-level executives, according to the people. The antitrust division, which has an immunity program to

2

> motivate wrongdoers to confess and inform on others, has stepped
> up its commitment to holding individuals responsible.[1]

The Bloomberg article also likened the generic drugs conspiracy to the automotive parts

cartel.

4.      On November 7, 2016, the publication *mlex* reported that the DOJ had received in

the summer of 2016 assistance from a leniency applicant:

> While the Justice department didn't have a whistleblower at the
> beginning of the investigation, it is understood that this summer a
> company applied for leniency, which grants full immunity to the
> first company to come forward and admit to cartel violations.
>
> The company is understood to be privately held and hasn't publicly
> disclosed its involvement in the investigation.

5.      As described below, several of the companies named as Defendants here have

admitted that they are being investigated by DOJ or state Attorneys General ("AGs") with

respect to potential collusion concerning the generic drugs that they manufacture.

6.      Pravastatin sodium is one of the generic drugs under scrutiny. An American Bar

Association presentation dated May 12, 2016 noted that it is one of the generic drugs that has

exhibited "sharp price increases" during the last few years.[2] An August 2016 report by the

General Accounting Office ("GAO") likewise noted "extraordinary price increases" for

pravastatin sodium.[3] A Morgan Lewis "2015 Global Cartel Enforcement Report" published in

---

[1] http://www.bloomberg.com/news/articles/2016-11-03/u-s-charges-in-generic-drug-probe-said-to-be-filed-by-year-end.

[2]

http://www.americanbar.org/content/dam/aba/administrative/healthlaw/Generic_Drugs_Price_Fi xing_Litigation.authcheckdam.pdf.

[3] http://www.gao.gov/products/GAO-16-706.

January of 2016 has identified pravastatin sodium as one of the "generic drugs at issue" in the investigations being conducted by DOJ and state AGs.[4]

7.     The entire purpose of permitting a generic drug industry in the United States was to encourage the manufacture of less expensive, non-branded substitutes for branded prescription drugs that either had no patent exclusivity or for which the patent exclusivity was expiring. According to a 2015 GPhA report, 88% of all prescriptions in United States are filled with a generic drug.[5] In a January 2012 report, the GAO noted that "[o]n average, the retail price of a generic drug is 75 percent lower than the retail price of a brand-name drug."[6]

8.     As reflected in a chart compiled by Representative Elijah E. Cummings ("Cummings"), Ranking Member of the House Committee on Oversight and Government Reform and Senator Bernie Sanders ("Sanders"), Chairman of the Subcommittee on Primary Health and Aging of the Senate Committee on Health, Education, Labor and Pensions, prices for certain generic drugs, including pravastatin sodium, increased dramatically in 2013:[7]

---

[4] https://www.morganlewis.com/~/media/files/document/cartel-enforcement-report-year-end-2015.ashx?la=en.

[5] http://www.gphaonline.org/media/wysiwyg/PDF/GPhA_Savings_Report_2015.pdf.

[6] http://www.gao.gov/assets/590/588064.pdf.

[7] http://www.sanders.senate.gov/download/face-sheet-on-generic-drug-price-increases?inline=file

4

| Drug | Use | Average Market Price Oct. 2013 | Average Market Price April 2014 | Average Percentage Increase |
|---|---|---|---|---|
| Doxycycline Hyclate (bottle of 500, 100 mg tablets) | antibiotic used to treat a variety of infections | $20 | $1,849 | 8,281% |
| Albuterol Sulfate (bottle of 100, 2 mg tablets) | used to treat asthma and other lung conditions | $11 | $434 | 4,014% |
| Glycopyrrolate (box of 10 0.2 mg/mL, 20 mL vials) | used to prevent irregular heartbeats during surgery | $65 | $1,277 | 2,728% |
| Divalproex Sodium ER (bottle of 80, 500 mg tablets ER 24H) | used to prevent migraines and treat certain types of seizures | $31 | $234 | 736% |
| Pravastatin Sodium (bottle of 500, 10 mg tablets) | used to treat high cholesterol and to prevent heart disease | $27 | $196 | 573% |
| Neostigmine Methylsulfate (box of 10 1:1000 vials) | used in anesthesia to reverse the effects of some muscle relaxants | $25 | $121 | 522% |
| Benazepril/Hydrochlorothiazide (bottle of 100, 20-25 mg tablets) | used to treat high blood pressure | $34 | $149 | 420% |
| Drug | Use | Average Market Price Nov. 2012 | Average Market Price Sept. 2014 | Average Percentage Increase |
| Isuprel (box of 25, 0.2 mg/mL vials) | used to treat heart attacks and irregular heartbeat | $916 | $4,489 | 390% |
| Nitropress (50 mg vial) | used to treat congestive heart failure and reduce blood pressure | $44 | $215 | 388% |
| Drug | Use | Average Market Price Oct. 2012 | Average Market Price June 2014 | Average Percentage Increase |
| Digoxin (single tablet, 250 mcg) | used to treat irregular heartbeats and heart failure | $0.11 | $1.10 | 884% |

9.     The price increases described above endanger human lives. Many patients with high cholesterol need to take pravastatin sodium regularly in order to deal with their health condition.

10.     Antitrust regulators have also been actively investigating the price hikes. By November 3, 2014, as noted above, the DOJ opened a criminal grand jury investigation into the pricing of various generic drugs, which reportedly include pravastatin sodium.

11.     Plaintiffs allege that during the Class Period, Defendants conspired, combined and contracted to fix, raise, maintain and stabilize prices at which generic pravastatin sodium would

be sold.  As a result of Defendants' unlawful conduct, Plaintiffs and the other members of the proposed Classes paid artificially inflated prices that exceeded the amount they would have paid if a competitive market had determined prices for generic pravastatin sodium.

## JURISDICTION AND VENUE

12.     Plaintiff brings this action under Section 16 of the Clayton Act (15 U.S.C. § 26), for injunctive relief and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff and the members of the Class by reason of the violations of Sections 1 and 3 of the Sherman Act (15 U.S.C. § 1, 3).

13.     This action is also instituted under the antitrust, consumer protection, and common laws of various states for damages and equitable relief, as described in Counts Two through Four below.

14.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 and by Section 16 of the Clayton Act (15 U.S.C. §26). In addition, jurisdiction is also conferred upon this Court by 28 U.S.C. §§ 1367.

15.     Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15(a) and 22 and 28 U.S.C. § 1391(b), (c) and (d) because during the Class Period, Defendants resided, transacted business, were found, or had agents in this District, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.  Venue is also proper in this District because the federal grand jury investigating the pricing of generic drugs is empaneled here and therefore it is likely that acts in furtherance of the alleged conspiracy took place here.

16.     This Court has personal jurisdiction over each Defendant because, *inter alia*, each Defendant: (a) transacted business throughout the United States, including in this District; (b) sold generic pravastatin sodium throughout the United States, including in this District; (c) had

6

substantial contacts with the United States, including in this District; and/or (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

## PLAINTIFF

17.     Plaintiff LIUNA Local 35 Health Care Fund is involved in the business of providing health and welfare benefits, among others, to covered lives. Plaintiff has paid or reimbursed eligible members' prescription drug benefits for Pravastatin during the Class Period, as defined below.  Local 35 Health Care Fund has sustained injury by paying more than it would have absent Defendants' unlawful scheme to prevent generic entry. For prescriptions of generic drugs, such as generic pravastatin sodium manufactured by one or more Defendants, the employee plan participant typically pays 30% of the cost of the prescription, with a $10 minimum co-payment.  Participating pharmacies collect the co-payment from the employee plan participant and bill LIUNA Local 35 for the remaining cost of the generic pravastatin sodium purchases. As a result of the alleged conspiracy, Plaintiff was injured in its business or property by reason of the violations of law alleged herein.

## DEFENDANTS

18.     Defendant Dr. Reddy's Laboratories, Ltd. is an Indian corporation that has its principal place of business in Hyderabad, India and has operations located in the United States at Princeton, New Jersey. During the Class Period, Dr. Reddy's Laboratories, Ltd. sold generic pravastatin sodium to customers in this District and other locations in the United States through its wholly-owned subsidiary, Defendant Dr. Reddy's Laboratories, Inc., which has its principal place of business in Princeton, New Jersey.  Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories, Inc. will be referred to collectively herein as "Dr. Reddy's."

7

19.     Defendant Teva Pharmaceuticals USA, Inc. ("Teva") is a Delaware corporation with its principal place of business in North Wales, Pennsylvania. During the Class Period, Teva sold generic pravastatin sodium to customers in this District and other locations in the United States.

20.     Defendant Sandoz, Inc. is a Colorado corporation with its principal place of business in Princeton, New Jersey. During the Class Period, Sandoz sold generic pravastatin sodium to customers in this District and other locations in the United States. One of the companies under the Sandoz umbrella is Defendant Lek Pharmaceuticals, d.d., headquartered in Ljubljana, Slovenia, which manufactures generic pravastatin sodium for Sandoz, Inc.[8] Sandoz, Inc. and Lek Pharmaceuticals, d.d. will be referred to collectively herein as "Sandoz".

21.     Defendant Mylan, Inc. ("Mylan") is a Delaware corporation with its principal place of business in Canonsburg, Pennsylvania. During the Class Period, Mylan sold generic pravastatin sodium to customers in this District and other locations in the United States.

22.     Defendant Glenmark Pharmaceuticals Inc., USA ("Glenmark") is a Delaware corporation with its principal place of business in Mahwah, New Jersey. Glenmark's parent company is located in Mumbai, India. During the Class Period, Glenmark sold generic pravastatin sodium to customers in this District and other locations in the United States.

23.     Defendant Apotex, Inc. ("Apotex") is a Canadian corporation with its principal place of business in Ontario, Canada. During the Class Period, Apotex sold generic pravastatin sodium to customers in this District and other locations in the United States.

24.     Defendant Zydus Pharmaceuticals USA, Inc. has its principal place of business in Pennington, New Jersey and is the United States division of Defendant Cadila Healthcare, an

---

[8] https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=52dc677e-98a9-4c2b-8e00-27c5d660179b.

8

Indian pharmaceutical company with its principal place of business located in Ahmedabad, India. During the Class Period, Zydus Pharmaceuticals USA, Inc. sold generic pravastatin sodium to customers in this District and other locations in the United States. Zydus Pharmaceuticals USA, Inc. and Cadila Healthcare will be referred to collectively herein as "Zydus".

25.     Defendant Lupin Pharmaceuticals, Inc. has its principal place of business in Baltimore, Maryland and is a subsidiary of Defendant Lupin, Ltd., an Indian company having its principal place of business in Mumbai, India. Lupin, Ltd. manufactures generic pravastatin sodium sold by Lupin Pharmaceuticals, Inc. to customers in this District and other locations in the United States during the Class Period.[9] Lupin, Ltd. and Lupin Pharmaceuticals, Inc. will be referred to collectively herein as "Lupin."

26.     Defendant Actavis Holdco U.S., Inc. ("Actavis") is a Delaware corporation that has its administrative headquarters in Parsippany-Troy Hills, New Jersey. In 2012, Watson Pharmaceuticals, Inc. acquired then-Switzerland-based Actavis Group to form Actavis plc, later known as Allergan plc, after Actavis plc acquired Allergan Inc. in 2015. In August 2016, Teva Pharmaceutical Industries Ltd., owner of Defendant Teva, acquired Allergan plc's generic pharmaceutical business for $40.5 billion. Actavis Holdco U.S., Inc. was among Allergan plc's generic pharmaceutical entities acquired by Teva Pharmaceutical Industries Ltd. During the Class Period, Actavis sold generic pravastatin sodium to customers in this District and in other locations in the United States

27.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were

_____

[9] https://dailymed.nlm.nih.gov/dailymed/image.cfm?type=img&name=c22bdd6a-a080-4298-b1a9-8cec48729c9b-03.jpg&setid=1123d56c-16f0-4f81-b56f-67b1f343ae1e.

9

actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

28.     All acts alleged in this Complaint to have been done by Defendants were performed by their officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of Defendants' business affairs.

## CO-CONSPIRATORS

29.     Various other persons, firms, corporations and entities have participated as unnamed co-conspirators with Defendants in the violations and conspiracy alleged herein.  In order to engage in the offenses charged and violations alleged herein, these co-conspirators have performed acts and made statements in furtherance of the antitrust violations and conspiracies alleged herein.

30.     At all relevant times, each Defendant was an agent of each of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency.  Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants. Defendants, and each of them, are individually sued as participants and as aiders and abettors in the improper acts and transactions that are the subject of this action.

## INTERSTATE TRADE AND COMMERCE

31.     The business activities of Defendants that are the subject of this action were within the flow of, and substantially affected, interstate trade and commerce.

32.     During the Class Period, Defendants sold substantial quantities of generic pravastatin sodium in a continuous and uninterrupted flow of interstate commerce to customers throughout the United States.

## FACTUAL ALLEGATIONS

### The Industry

10

33.     Defendants manufacture and sell, *inter alia*, generic versions of a branded drug once the patent on the branded drug expires.

34.     According to the FDA's Glossary, a generic drug is "the same as a brand name drug in dosage, safety, strength, how it is taken, quality, performance, and intended use." [10] Once the FDA approves a generic drug as "therapeutically equivalent" to a brand drug, the generic version "can be expected to have equal effect and no difference when substituted for the brand name product." *Id.*

35.     Due to the price differentials between branded and generic drugs, as well as other institutional features of the pharmaceutical industry, pharmacists liberally and substantially substitute the generic drug when presented with a prescription for the branded drug. Since passage of the Hatch-Waxman Act (Pub. L. No. 98-417, 98 Stat. 1585 (codified at 15 U.S.C. §§ 68b-68c, 70b; 21 U.S.C. §§ 301 note, 355, 360cc; 28 U.S.C. § 2201; 35 U.S.C. §§ 156, 271, 282)), every state has adopted substitution laws requiring or permitting pharmacies to substitute generic drug equivalents for branded drug prescriptions (unless the prescribing physician specifically orders otherwise by writing "dispense as written" or similar language on the prescription).

### Market for Generic Pravastatin Sodium

36.     The market for generic pravastatin sodium is mature and the Defendants in that market can only gain market share by competing on price.

37.     Pravastatin sodium is one of a class of lipid-lowering compounds, which reduce the biosynthesis of cholesterol. It is an inhibitor of the HMG-CoA reductase, the enzyme that catalyzes the early rate-limiting step in cholesterol biosynthesis. Pravastatin sodium is an odorless, white to off-white fine or crystalline powder. It is available for oral administration in

---

[10] http://www.fda.gov/Drugs/InformationOnDrugs/ucm079436.htm#G.

11

the form of tablets ranging in dosage from 10 mg to 80 mg. The branded version of this drug is PRAVACHOL®.

38.     Defendants are manufacturers and/or distributors of generic pravastatin sodium. These Defendants collectively sell hundreds of millions of dollars' worth of pravastatin sodium products every year in the United States. In its 2013 survey of top HMG-CoA reductase inhibitors, pravastatin sodium had a United States prescription market share of 14.5%.[11] According to *Pharmacy Times*, in 2012, Defendant Teva's version of generic pravastatin sodium was the 25th most prescribed drug in the United States.[12]

39.     The market for generic pravastatin sodium products is controlled by the Defendants. While there are smaller companies operating in the market, they create no restraints on Defendants' pricing activities.

40.     According to the 2015 edition of the FDA's Orange Book, PRAVACHOL® is a reference listed drug ("RLD"). An RLD is an "approved drug product to which new generic versions are compared to show that they are bioequivalent," that is, the generic version "performs in the same manner as the Reference Listed Drug." FDA's Glossary, available at http://www.fda.gov/Drugs/InformationOnDrugs/ucm079436.htm#RLD.     A     drug     company seeking approval to market a generic equivalent must refer to the Reference Listed Drug in its Abbreviated New Drug Application (ANDA)." *Id.* Once the FDA determines that a drug company's application contains sufficient scientific evidence establishing the bioequivalence of the product to the RLD, an applicant may manufacture and market the generic drug product to provide a safe, effective, low cost alternative to the American public. *Id.*

---

[11] https://www.statista.com/statistics/311999/cholesterol-lowering-drugs-by-us-prescription-market-share/.

[12] http://www.pharmacytimes.com/publications/issue/2013/july2013/top-200-drugs-of-2012.

12

41.     Furthermore, the FDA will generally assign a Therapeutic Equivalence Code ("TE Code") of AB to those products it finds to be bioequivalent.[13] This coding system allows users to quickly determine important information about the drug product in question.[14] For example, the FDA states that "[p]roducts generally will be coded AB if a study is submitted demonstrating bioequivalence. Even though drug products of distributors and/or repackagers are not included in the List, they are considered therapeutically equivalent to the application holder's drug product if the application holder's drug product is rated AB."[15]

42.     PRAVACHOL® in tablet form has TE Code of "AB." As the FDA has listed in its Orange Book with regard to Therapeutic Equivalents for PRAVACHOL®, current generic equivalents which share the code AB are those distributed by Defendants.

### Defendants' Pricing Activities

43.     Defendants' dramatic and unexplained price hikes have engendered extensive scrutiny by the United States Congress and by federal and state antitrust regulators. In a January 8, 2014 letter to members of key committees of the United States House of Representatives and Senate, Douglas P. Hoey, Chief Executive Officer of the National Community Pharmacists' Association, asked Congress to conduct an investigation of generic drug price increases.[16] On October 2, 2014, Sanders and Cummings sent letters to a number of the Defendants.[17] The letter

---

[13] http://www.fda.gov/Drugs/DevelopmentApprovalProcess/FormsSubmissionRequirements/Electronic Submissions/DataStandardsManualmonographs/ucm071713.htm.

[14] http://www.fda.gov/Drugs/DevelopmentApprovalProcess/ucm079068.htm#TEC.

[15] http://www.fda.gov/Drugs/DevelopmentApprovalProcess/FormsSubmissionRequirements/Electronic Submissions/DataStandardsManualmonographs/ucm071713.htm.

[16] https://www.ncpanet.org/pdf/leg/jan14/letter-generic-spikes.pdf.

[17] The October Letters may be found at http://www.sanders.senate.gov/newsroom/press-releases/congress-investigating-why-generic-drug-prices-are-skyrocketing.

13

to Mylan contained this chart showing drastic increases in the average market prices of various

dosages of generic pravastatin sodium products between October of 2013 and April of 2014:

| Pravastatin Sodium | bottle of 1000, 20mg tablets | $77 | $368 | $291 | 447% |
|---|---|---|---|---|---|
| Pravastatin Sodium | bottle of 1000, 40mg tablets | $114 | $540 | $426 | 528% |
| Pravastatin Sodium | bottle of 500, 10mg tablets | $27 | $196 | $169 | 573% |
| Pravastatin Sodium | bottle of 500, 80mg tablets | $59 | $299 | $240 | 365% |
| Pravastatin Sodium | bottle of 90, 10mg tablets | $6 | $34 | $28 | 420% |
| Pravastatin Sodium | bottle of 90, 20mg tablets | $7 | $35 | $28 | 446% |
| Pravastatin Sodium | bottle of 90, 40mg tablets | $9 | $51 | $42 | 473% |
| Pravastatin Sodium | bottle of 90, 80mg tablets | $14 | $52 | $39 | 334% |

Letters to Dr. Reddy's, Apotex, Teva and Zydus contained identical charts.

44.     The letters go on to state:

This dramatic increase in generic drug prices results in decreased access for patients.
According to the National Community Pharmacists Association (NCPA), a 2013 member survey
found that pharmacists across the country "have seen huge upswings in generic drug prices that
are hurting patients and pharmacies ability to operate," and "77% of pharmacists reported 26 or
more instances over the past six months of a large upswing in a generic drug's acquisition price."
These price increases have a direct impact on patients' ability to purchase their needed
medications. The NCPA survey found that "pharmacists reported patients declining their
medication due to increased co-pays," and "84% of pharmacists said that the acquisition
price/lagging reimbursement trend is having a 'very significant' impact on their ability to remain
in business to continue serving patients."[2]

45.     National Average Drug Acquisition Cost ("NADAC") data show the average

increase in the price of pravastatin sodium across the major manufacturers. For example,

NADAC data for the 10 mg dosage of pravastatin sodium manufactured and sold by Defendants

Teva, Glenmark, Lupin (Cadila), Sandoz (Lek), Actavis (Watson), Mylan, Apotex and Dr.

Reddy's depict the following:

14



46.     NADAC data for the 20 mg dosage of pravastatin sodium manufactured and sold by the aforementioned Defendants show the following:



15

47.    NADAC data for the 40 mg dosage of pravastatin sodium manufactured and sold by the aforementioned Defendants is as follows:



48.    Finally, NADAC data for the 80 mg dosage of Pravastatin Sodium manufactured and sold by the aforementioned Defendants is as follows:



49.     On November 20, 2014, Sanders's committee held a hearing entitled "Why Are Some Generic Drugs Skyrocketing In Price?" ("Senate Hearing"). Various witnesses discussed the price hikes for generic drugs.

50.     Industry analysts have questioned manufacturers' claims that price increases are due to supply disruptions.  Indeed, Richard Evans at Sector & Sovereign Research recently wrote: "[a] plausible explanation [for price increases of generic drugs, including generic pravastatin sodium] is that generic manufacturers, having fallen to near historic low levels of financial performance are cooperating to raise the prices of products whose characteristics – low sales due to either very low prices or very low volumes – accommodate price inflation." [18]

51.     Industry analysts have also questioned manufacturers' claims that price increases are due to supply disruptions.  Indeed, Richard Evans at Sector & Sovereign Research recently wrote: "[a] plausible explanation [for price increases of generic drugs] is that generic manufacturers, having fallen to near historic low levels of financial performance are cooperating to raise the prices of products whose characteristics – low sales due to either very low prices or very low volumes – accommodate price inflation." [19]

**Congressional And Regulators' Responses**

52.     As noted above, the unseemly profits made by the generic drug manufacturers led to inquiries by Congress and to the Senate Hearing, where numerous witnesses referenced the pricing history summarized above.

---

[18] http://blogs.wsj.com/pharmalot/2015/04/22/generic-drug-prices-keep-rising-but-is-a-slowdown-coming/.

[19] http://blogs.wsj.com/pharmalot/2015/04/22/generic-drug-prices-keep-rising-but-is-a-slowdown-coming/.

53.     Sanders and Cummings followed up on the Senate Hearing by writing a letter on February 24, 2015 to the Office of the Inspector General ("OIG") of the Department of Health & Human Services, asking it to investigate the effect price increases of generic drugs, including generic pravastatin sodium, have had on generic drug spending within the Medicare and Medicaid programs.[20] The OIG responded in a letter dated April 13, 2015, saying it planned to engage in a review of quarterly average manufacturer prices for the 200 top generic drugs from 2005 through 2014.[21]

54.     Antitrust regulators have also been actively investigating the price hikes. By November 3, 2014, as noted above, the DOJ opened a criminal grand jury investigation into the pricing of various generic drugs, which reportedly include pravastatin sodium. The DOJ is poised to issue criminal indictments against various companies, as early as December of this year. State AGs have also pursued their own investigations.

55.     In its Form 10-K filed with the Securities & Exchange Commission ("SEC") on February 16, 2016, Mylan N.V. reported that "[o]n December 21, 2015, the Company received a subpoena and interrogatories from the Connecticut Office of the Attorney General seeking information relating to the marketing, pricing and sale of certain of the Company's generic products (including Doxycycline) and communications with competitors about such products."[22]

56.     In its SEC Form 6-K filed on August 11, 2016, Dr. Reddy's summarized the ongoing DOJ and state AG investigations:

---

[20] http://www.sanders.senate.gov/download/sanders-cummings-letter?inline=file.

[21] http://www.sanders.senate.gov/download/oig-letter-to-sen-sanders-4-13-2015?inline=file.

[22] http://files.shareholder.com/downloads/ABEA-2LQZGT/146191293x0xS1623613-16-46/1623613/filing.pdf.

*Subpeona duces tecum from the Office of the Attorney General, California*

On November 3, 2014, Dr. Reddy's Laboratories, Inc. received a subpoena duces tecum to appear before the Office of the Attorney General, California (the "California AG") and produce records and documents relating to the pricing of certain products. A set of five interrogatories related to pricing practices was served as well. Compliance with the subpoena is ongoing, and we understand that the investigation is continuing.

*Subpoenas from the Division of the U.S. Department of Justice ("DOJ") and the office of the Attorney General for the State of Connecticut*

On July 6 and August 7, 2016, one of our subsidiaries received subpoenas from the DOJ and the office of the Attorney General for the State of Connecticut, respectively, seeking information relating to the marketing, pricing and sale of certain of our generic products and any communications with competitors about such products. We intend to fully cooperate with these inquiries. [23]

57.    On November 15, 2016 Teva filed an SEC Form 6-K.[24] It disclosed that:

On June 21, 2016, Teva USA received a subpoena from the Antitrust Division of the DOJ seeking documents and other information relating to the marketing and pricing of certain of Teva USA's generic products and communications with competitors about such products. Actavis received a similar subpoena in June 2015. On July 12, 2016, Teva USA received a subpoena from the Connecticut Attorney General seeking documents and other information relating to potential state antitrust law violations. Actavis has also received a similar subpoena from the Connecticut Attorney General.

58.    The fact that these companies received subpoenas from a federal grand jury is significant, as is reflected in Chapter 3 of the 2014 edition of the DOJ's *Antitrust Division Manual.*[25] Section F.1 of that chapter notes that "staff should consider carefully the likelihood that, if a grand jury investigation developed evidence confirming the alleged anticompetitive

---

[23] https://www.sec.gov/Archives/edgar/data/1135951/000119312516680264/d93815d6k.htm.

[24] Available at http://ir.tevapharm.com/phoenix.zhtml?c=73925&p=irol-sec.

[25] http://www.justice.gov/atr/public/divisionmanual/chapter3.pdf.

conduct, the Division would proceed with a criminal prosecution." *Id.* at III-82. The staff request needs to be approved by the relevant field chief and is then sent to the Antitrust Criminal Enforcement Division." *Id.* "The DAAG [Deputy Assistant Attorney General] for Operations, the Criminal DAAG, and the Director of Criminal Enforcement will make a recommendation to the Assistant Attorney General. If approved by the Assistant Attorney General, letters of authority are issued for all attorneys who will participate in the grand jury investigation." *Id.* at III-83. "The investigation should be conducted by a grand jury in a judicial district where venue lies for the offense, such as a district from or to which price-fixed sales were made or where conspiratorial communications occurred." *Id.* Thus, the fact that certain of the Defendants received federal grand jury subpoenas is a strong indicator that antitrust offenses have occurred.

59.     Commentators have also taken note of the criminal subpoenas being issued. As noted on one legal website:

> The Justice Department's subpoenas focus on sharing and exchanging of pricing information and other issues among generic drug companies. The initial subpoenas, including two senior executives, suggest that the Justice Department has specific information relating to their participation in potentially criminal conduct. It is rare for the Justice Department to open a criminal investigation with specific subpoenas for individuals, along with company-focused subpoenas.
>
> Given the breadth of such a potential cartel investigation, the Justice Department's inquiry of the generic pharmaceutical industry could be significant. The prices for a large number of generic drug prices have increased significantly over the last year. There does not appear to be any rational explanation for such increases involving a diverse set of products.
>
> The scope of these price increases and the timing of them certainly raise serious concerns about collusive activity among competitors.[26]

---

[26] http://www.jdsupra.com/legalnews/criminal-global-cartel-focus-on-generic-92387/.

20

60. Or, as Mark Rosman, former assistant chief of the National Criminal Enforcement Section of DOJ's Antitrust Division, noted in an article on the "unusual" nature of the criminal subpoenas, "[a] DOJ investigation into the alleged exchange of pricing information in the pharmaceutical industry likely indicates that the agency anticipates uncovering criminal antitrust conduct in the form of price-fixing or customer allocation."[27]

61. And, as another legal commentator has recently noted,

> The recent disclosure widens the DOJ's criminal probe into whether or not leading generic drug providers are colluding to artificially raise generic drug prices. According to data from the Centers for Medicare and Medicaid Services (CMS), more than half of all generic drug prices rose between June 2013 and June 2014, including 10 percent of all generic drugs doubling in price during that time. As the fourth largest generics producer in the world, at least prior to the Teva deal, Allergan is largest company to be involved in the DOJ investigation so far.[28]

62. Also of significance is the fact reported in *mlex* that there is a leniency applicant who has sought amnesty from the DOJ. As explained on one of the DOJ's webpages (http://www.justice.gov/atr/frequently-asked-questions-regarding-antitrust-divisions-leniency-program):

> **5. Does a leniency applicant have to admit to a criminal violation of the antitrust laws before receiving a conditional leniency letter?**
>
> Yes. The Division's leniency policies were established for corporations and individuals "reporting their illegal antitrust activity," and the policies protect leniency recipients from criminal conviction. Thus, the applicant must admit its participation in a criminal antitrust violation involving price fixing, bid rigging, capacity restriction, or allocation of markets, customers, or sales or production volumes before it will receive a conditional leniency letter. Applicants that have not engaged in criminal violations of the antitrust laws have no need to receive leniency protection from a criminal violation and will receive no

---

[27] https://www.wsgr.com/publications/PDFSearch/rosman-1114.pdf.

[28] http://www.legalreader.com/doj-subpoenas-allergan-as-generics-antitrust-probe-widens/.

benefit from the leniency program.

As indicated on the webpage, the leniency applicant must also establish "[t]he confession of wrongdoing is truly a corporate act, as opposed to isolated confessions of individual executives or officials."

## Factors Increasing The Market's Susceptibility To Collusion

63.      Publicly available data on the generic pravastatin sodium markets in the United States demonstrates that it is susceptible to cartelization by the Defendants.  Factors that make a market susceptible to collusion include: (1) a high degree of industry concentration; (2) significant barriers to entry; (3) inelastic demand; (5) a standardized product with a high degree of interchangeability between the goods of cartel participants; (5) absence of a competitive fringe of sellers; and (6) intercompetitor contacts and communication.

64.      *Industry Concentration*. A high degree of concentration facilitates the operation of a cartel because it makes it easier to coordinate behavior among co-conspirators.

65.      In the United States generic pravastatin sodium market, the number of competitors has dwindled, creating cartel conditions. The firms that currently control most of the market are the Defendants.

66.      *Barriers To Entry*. Supracompetitive pricing in a market normally attracts additional competitors who want to avail themselves of the high levels of profitability that are available.  However, the presence of significant barriers to entry makes this more difficult and helps to facilitate the operation of a cartel.

67.      Here, there are significant capital, regulatory and intellectual property barriers to entry in the generic pravastatin sodium markets. Costs of manufacture, coupled with regulatory oversight, represent a substantial barrier to entry in both the generic pravastatin sodium markets.

68.      Intellectual property costs can also be substantial.

22

69. **Demand Inelasticity**. Price elasticity of demand is defined as the measure of responsiveness in the quantity demanded for a product as a result of change in price of the same product. It is a measure of how demand for a product reacts to a change in price. The basic necessities of life—food, water, and shelter—are examples of goods that experience nearly perfectly inelastic demand at or near the minimums necessary to sustain life. In order for a cartel to profit from raising prices above competitive levels, demand for the product must be sufficiently inelastic such that any loss in sales will be more than offset by increases in revenue on those sales that are made. Otherwise, increased prices would result in declining revenues and profits.

70. Generic pravastatin sodium is critical to the health of patients with cholesterol issues; it is considered a medical necessity that must be purchased at whatever cost the Defendants offer them for sale. Thus, generic pravastatin sodium are excellent candidates for cartelization because price increases will result in more revenue, rather than less.

71. **Standardized Product with High Degree of Interchangeability**. A commodity-like product is one that is standardized across suppliers and allows for a high degree of substitutability among different suppliers in the market. When products offered by different suppliers are viewed as interchangeable by purchasers, it is easier for the suppliers to agree on prices for the good in question and it is easier to monitor these prices effectively. Here, generic pravastatin sodium made by the Defendant manufacturers are each chemical compounds composed of the same raw materials.

72. **Absence of a Competitive Fringe of Sellers**. Companies that are not part of the conspiracy can erode at conspirators' market shares by offering products at a lower, more competitive price. This reduces revenue and makes sustaining a conspiracy more difficult. In

the market for generic pravastatin sodium, there is no realistic threat that a fringe of competitive sellers will take market share from Defendants. The Defendants in the market for generic pravastatin sodium have oligopolistic power, which facilitates their ability to raise prices without losing market share to non-conspirators.

73. ***Intercompetitor Contacts and Communications***. In order to be successful, collusive agreements require a level of trust among the conspirators. Collaboration fostered through industry associations facilitate relationships between individuals who would otherwise be predisposed to compete vigorously with each other. Here, the Defendants are members of or participants in the GPhA, which describes itself on its website as "the nation's leading trade association for manufacturers and distributors of generic prescription drugs, manufacturers of bulk active pharmaceutical chemicals, and suppliers of other goods and services to the generic industry."[29] Thus, representatives of the Defendants have opportunities to meet and conspire at functions of this group, as well as at industry healthcare meetings. The grand jury subpoenas discussed above lend further support to the conclusion that intercompetitor communications occurred with respect to the pricing of generic pravastatin sodium. Indeed, according to the previously-identified PaRR Report, "prosecutors are taking a close look at trade associations as part of their investigation as having been one potential avenue for facilitating the collusion between salespeople at different generic producers."

74. As noted in the charts above, the price hikes in pravastatin sodium commenced in the fourth quarter of 2013. The GPhA 2013 Annual Meeting was held in Orlando, Florida on

---

[29] http://www.gphaonline.org/about/the-gpha-association.

February 19-21, 2013. Among those in attendance were representatives of Apotex, Dr. Reddy's, Glenmark, Mylan, Lupin, Sandoz, Teva and Zydus.[30]

75.     Defendants Glenmark, Zydus, Lupin and Dr. Reddy's are all part of companies based in India. Several Indian companies--including Dr. Reddy's and Glenmark--are part of a group of Indian companies that have raised prices on a number of generic drugs in recent years--what have been dubbed as "super inflated generics."[31]

### DEFENDANTS' ANTITRUST VIOLATIONS

76.     During the Class Period, the Defendants engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain or stabilize the prices of generic pravastatin sodium in the United States.

77.     In formulating and effectuating the contract, combination or conspiracy, the Defendants identified above and their co-conspirators engaged in anticompetitive activities, the purpose and effect of which were to artificially raise, fix, maintain, and/or stabilize the price of generic pravastatin sodium sold in the United States.  These activities included the following:

> a.     Defendants participated in meetings and/or conversations to discuss the price of generic pravastatin sodium in the United States;

> b.     Defendants agreed during those meetings and conversations to charge prices at specified levels and otherwise to increase and/or maintain prices of generic pravastatin sodium sold in the United States;

> c.     Defendants agreed during those meetings and conversations to fix the price of generic pravastatin sodium; and

---

[30] http://www.gphaonline.org/index.php/events/2013-annual-meeting-past-attendees.

[31] http://epaperbeta.timesofindia.com/Article.aspx?eid=31815&articlexml=Taro-Drug-Pricing-Probe-may-Widen-to-more-14092016014050.

        d.       Defendants issued price announcements and price quotations in accordance with their agreements.

Defendants and their co-conspirators engaged in the activities described above for the purpose of effectuating the unlawful agreements described in the Complaint.

78.      During and throughout the period of the conspiracy alleged in this Complaint, Plaintiff and members of the Class purchased generic pravastatin sodium from Defendants (or their subsidiaries or controlled affiliates) or their co-conspirators at inflated and supracompetitive prices.

79.      Defendants' contract, combination or conspiracy constitutes an unreasonable restraint of interstate trade and commerce in violation of Sections 1 of the Sherman Act (15 U.S.C. § 1) and the laws of various states.

80.      As a result of Defendants' unlawful conduct, Plaintiffs and the other members of the class have been injured in their business and property in that they have paid more for generic pravastatin sodium than they would have paid in a competitive market.

81.      The unlawful contract, combination or conspiracy has had the following effects, among others:

        a.       price competition in the market for generic pravastatin sodium has been artificially restrained;

        b.       prices for generic pravastatin sodium sold by the Defendants have been raised, fixed, maintained, or stabilized at artificially high and non-competitive levels; and

        c.       purchasers of generic pravastatin sodium from the Defendants have been deprived of the benefit of free and open competition in the market for

generic pravastatin sodium.

## CLASS ACTION ALLEGATIONS

82.     Plaintiff brings this action on behalf of himself and as a class action under Rule

23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief

on behalf of the following class (the "Nationwide Class"):

> All persons and entities in the United States and its territories who
> purchased, paid and/or provided reimbursement for some or all of
> the purchase price for Defendants' generic pravastatin sodium
> products from June 1, 2013 through the present.  This class
> excludes: (a) Defendants, their officers, directors, management,
> employees, subsidiaries, and affiliates; (b) all federal and state
> governmental entities except for cities, towns, or municipalities
> with self-funded prescription drug plans; (c) all persons or entities
> who purchased Defendants' generic pravastatin sodium for
> purposes of resale or directly from Defendants;  (d) fully insured
> health plans (*i.e.*, health plans that purchased insurance covering
> 100% of their reimbursement obligation to members); (e) any "flat
> co-pay" consumers whose purchases of Defendants' generic
> pravastatin sodium products were paid in part by a third party
> payor and whose co-payment was the same regardless of the retail
> purchase price; and (f) any judges or justices involved in this
> action and any members of their immediate families.

83.     Plaintiff also brings this action on behalf of himself and as a class action under

Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the

common law of unjust enrichment and the state antitrust, unfair competition, and consumer

protection laws of the states listed below (the "Indirect Purchaser States")[32] on behalf of the

following class (the "Damages Class"):

> All persons and entities in the Indirect Purchaser States who
> purchased, paid and/or provided reimbursement for some or all of

---

[32] The "Indirect Purchaser States" consist of Alabama, Arkansas, Arizona, California, District of
Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota,
Missouri, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York,
North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee,
Utah, Vermont, West Virginia and Wisconsin.

the purchase price for Defendants' generic pravastatin sodium products from June 1, 2013 through the present. This class excludes: (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; (b) all federal and state governmental entities except for cities, towns, or municipalities with self-funded prescription drug plans; (c) all persons or entities who purchased Defendants' generic pravastatin sodium products for purposes of resale or directly from Defendants; (d) fully insured health plans (*i.e.*, health plans that purchased insurance covering 100% of their reimbursement obligation to members); (e) any "flat co-pay" consumers whose purchases of Defendants' generic pravastatin sodium products were paid in part by a third party payor and whose co-payment was the same regardless of the retail purchase price; and (f) any judges or justices involved in this action and any members of their immediate families.

84.    The Nationwide Class and the Damages Class are referred to herein as the "Classes."

85.    While Plaintiff does not know the exact number of the members of the Classes, Plaintiff believes there are millions of members in each Class.

86.    Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

a.    Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain and/or stabilize prices of generic pravastatin sodium and/or engaged in market allocation for generic pravastatin sodium sold by prescription in the United States;

b.    The identity of the participants of the alleged conspiracy;

c.    The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

d.    Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Count;

e.    Whether the alleged conspiracy violated state antitrust and

28

unfair competition laws, and/or state consumer protection
laws, as alleged in the Second and Third Counts;

f.   Whether the Defendants unjustly enriched themselves to
the detriment of the Plaintiff and the members of the
Classes, thereby entitling Plaintiff and the members of the
Classes to disgorgement of all benefits derived by
Defendants, as alleged in the Fourth Count;

g.   Whether the conduct of the Defendants and their co-
conspirators, as alleged in this Complaint, caused injury to
the business or property of Plaintiff and the members of the
Classes;

h.   The effect of the alleged conspiracy on the prices of
Generic pravastatin sodium sold in the United States during
the Class Period;

i.   The appropriate injunctive and related equitable relief for
the Nationwide Class; and

j.   The appropriate class-wide measure of damages for the
Damages Class.

87.   Plaintiff's claims are typical of the claims of the members of the Classes, and
Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff and all members
of the Classes are similarly affected by Defendants' wrongful conduct in that they paid
artificially inflated prices for generic pravastatin sodium purchased indirectly from the
Defendants and/or their co-conspirators.

88.   Plaintiff's claims arise out of the same common course of conduct giving rise to
the claims of the other members of the Classes.  Plaintiff's interests are coincident with, and not
antagonistic to, those of the other members of the Classes.  Plaintiff is represented by counsel
who are competent and experienced in the prosecution of antitrust and class action litigation.

89.   The questions of law and fact common to the members of the Classes
predominate over any questions affecting only individual members, including legal and factual
issues relating to liability and damages.

29

90.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

91.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

### FIRST COUNT
### Violation of Section 1 and 3 of the Sherman Act
### (on behalf of Plaintiff and the Nationwide Class)

92.     Plaintiff repeats the allegations set forth above as if fully set forth herein.

93.     Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. §§ 1, 3).

94.     The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

95.     During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to establish a price floor and artificially fix, raise, stabilize, and control prices for generic pravastatin sodium, thereby creating anticompetitive effects.

30

96.     The conspiratorial acts and combinations have caused unreasonable restraints in the market for generic pravastatin sodium.

97.     As a result of Defendants' unlawful conduct, Plaintiff and other similarly situated indirect purchasers in the Nationwide Class who purchased generic pravastatin sodium have been harmed by being forced to pay inflated, supracompetitive prices for generic pravastatin sodium.

98.     In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

99.     Defendants' conspiracy had the following effects, among others:

a.      Price competition in the market for generic pravastatin sodium has been restrained, suppressed, and/or eliminated in the United States

b.      Prices for generic pravastatin sodium provided by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

c.      Plaintiff and members of the Nationwide Class who purchased generic pravastatin sodium indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

100.    Plaintiff and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for generic pravastatin sodium purchased indirectly from Defendants and the co-conspirators than they would have paid and will pay in the absence of the conspiracy.

101.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

102.    Plaintiff and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## SECOND COUNT
### Violation of State Antitrust Statutes
### (on behalf of Plaintiff and the Damages Class)

103.    Plaintiff repeats the allegations set forth above as if fully set forth herein.

104.    During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of generic pravastatin sodium in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

105.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supracompetitive prices for generic pravastatin sodium and to allocate customers for generic pravastatin sodium in the United States.

106.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including: (a) participating in meetings and conversations among themselves in the United States during which they agreed to price generic pravastatin sodium at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to generic pravastatin sodium provided in the United States; and (b) participating in meetings and trade association conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

32

107. Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, increase, maintain, or stabilize prices of generic pravastatin sodium.

108. Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of the following state antitrust statutes.

109. Defendants have entered into an unlawful agreement in restraint of trade in violation of Alabama Code § 6-6-60, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) price competition for generic pravastatin sodium was restrained, suppressed, and eliminated throughout Arizona; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Alabama commerce. As a direct and proximate result of defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Alabama Code § 6-6-60, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Alabama Code § 6-6-60, *et seq*.

110. Defendants have entered into an unlawful agreement in restraint of trade in violation of Arizona Revised Statutes, §§ 44-1401, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) price competition for generic pravastatin sodium was restrained, suppressed, and eliminated throughout Arizona; (2) generic pravastatin sodium prices

33

were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce. As a direct and proximate result of defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

111. Defendants have entered into an unlawful agreement in restraint of trade in violation of California Business and Professions Code §§ 16700 *et seq*. During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of California Business and Professions Code Section §16720. Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of generic pravastatin sodium at supracompetitive levels. The aforesaid violations of Section 16720 consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of generic pravastatin sodium. For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and creating a price floor, fixing, raising, and stabilizing the price of generic pravastatin sodium. The

34

combination and conspiracy alleged herein has had, *inter alia*, the following effects:  (1) price competition for generic pravastatin sodium has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for generic pravastatin sodium  provided by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased generic pravastatin sodium directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property in that they paid more for generic pravastatin sodium than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720, Plaintiff and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to California Business and Professions Code § 16750(a).

112.    Defendants have entered into an unlawful agreement in restraint of trade in violation of District of Columbia Code Annotated §§ 28-4501, *et seq.* Defendants' combinations or conspiracies had the following effects:  (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and members of the Damages Class, including those who resided in the District of Columbia and/or purchased generic pravastatin sodium that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in the District of Columbia; and (4) Plaintiff and members of the Damages Class, including those who resided in the District of Columbia and/or purchased

35

generic pravastatin sodium in the District of Columbia that were shipped by Defendants or their co-conspirators, paid supracompetitive, artificially inflated prices for generic pravastatin sodium, including in the District of Columbia. During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce. As a direct and proximate result of defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

113.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-1, *et seq.* Defendants' unlawful conduct had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-4, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Hawaii Revised Statutes Annotated §§ 480-4, *et seq.*

36

114.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act (740 Illinois Compiled Statutes 10/1, *et seq.*) Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Illinois; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

115.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Iowa; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.*   Accordingly,

Plaintiff and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553, *et seq.*

116. Defendants have entered into an unlawful agreement in restraint of trade in violation of Kansas Statutes Annotated, §§ 50-101, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Kansas; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

117. Defendants have entered into an unlawful agreement in restraint of trade in violation of Maine Revised Statutes (Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*) Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Maine; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive,

artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Maine commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

118.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Michigan Compiled Laws Annotated §§ 445.771, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Michigan; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

119.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Minnesota Annotated Statutes §§ 325D.49, *et seq.* Defendants' combinations or

39

conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

120. Defendants have entered into an unlawful agreement in restraint of trade in violation of Mississippi Code Annotated §§ 75-21-1, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing,

Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

121.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

122.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Nevada Revised Statutes Annotated §§ 598A.010, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Nevada; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4)

41

Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A, *et seq.*

123.    Defendants have entered into an unlawful agreement in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

42

124.    Defendants have entered into an unlawful agreement in restraint of trade in violation of New Mexico Statutes Annotated §§ 57-1-1, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq*.

125.    Defendants have entered into an unlawful agreement in restraint of trade in violation of New York General Business Laws §§ 340, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout New York; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium that were higher than they would have been absent the Defendants' illegal acts. During the Class Period, Defendants' illegal conduct

substantially affected New York commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.* The conduct set forth above is a *per se* violation of the Act. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

126. Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq.*

127. Defendants have entered into an unlawful agreement in restraint of trade in violation of North Dakota Century Code §§ 51-08.1-01, *et seq.* Defendants' combinations or

44

conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

128.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Oregon; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing,

Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq*.

129. Defendants have entered into an unlawful agreement in restraint of trade in violation of South Dakota Codified Laws §§ 37-1-3.1, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq*.

130. Defendants have entered into an unlawful agreement in restraint of trade in violation of Tennessee Code Annotated §§ 47-25-101, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiff and members of the Damages Class were deprived of free and open

46

competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

131.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Utah; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq.*

47

132.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq*. Defendants' combinations or conspiracies had the following effects:  (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Vermont; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq*.

133.    Defendants have entered into an unlawful agreement in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*. Defendants' combinations or conspiracies had the following effects:  (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.  During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce. As a direct and proximate result of Defendants'

48

unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq.*

134.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.* Defendants' combinations or conspiracies had the following effects:  (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) generic pravastatin sodium prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

135.    Plaintiff and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement. Plaintiff and members of the Damages Class have paid more for generic pravastatin sodium than they otherwise would have paid in the absence of Defendants'

49

unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

136.    In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of Plaintiff and members of the Damages Class.

137.    Accordingly, Plaintiff and members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

**THIRD COUNT**
**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiff and the Damages Class)**

138.    Plaintiff repeats the allegations set forth above as if fully set forth herein.

139.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

140.    Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et. seq.* Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which generic pravastatin sodium were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiff and members of the Damages Class. The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10). Defendants' unlawful conduct had the

following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers. As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

141. Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.* During the Class Period, Defendants manufactured, marketed, sold, or distributed generic pravastatin sodium in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above. This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law. The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a

51

common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code §17200, *et seq.*, including, but not limited to, the following:   (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.* of the California Business and Professions Code, set forth above. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.* of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent; (3) Defendants' acts or practices are unfair to purchasers of  generic pravastatin sodium in the State of California within the meaning of Section 17200, California Business and Professions Code; and (4) Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code. Plaintiff and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices. The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future. The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiff and members of the Damages Class to pay supracompetitive and artificially-inflated prices for generic pravastatin sodium.  Plaintiff and members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition. The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code. As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful

52

conduct and by Defendants' unfair competition. Plaintiff and members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, §§17203 and 17204.

142.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which generic pravastatin sodium were sold, distributed or obtained in the District of Columbia. The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiff and members of the Damages Class were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for generic pravastatin sodium.  Defendants had the sole power to set that price and Plaintiff and members of the Damages Class had no power to negotiate a lower price. Moreover, Plaintiff and members of the Damages Class lacked any meaningful choice in purchasing generic pravastatin sodium because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff and members of the Damages Class could avoid the overcharges.  Defendants' conduct with regard to sales of generic pravastatin sodium, including their illegal conspiracy to secretly fix the price of generic pravastatin sodium at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of

Plaintiff and the public.  Defendants took grossly unfair advantage of Plaintiff and members of the Damages Class.   The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for purchasers so that there was a gross disparity between the price paid and the value received for generic pravastatin sodium. Defendants' unlawful conduct had the following effects:  (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. As a direct and proximate result of the Defendants' conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

143.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*. Defendants' unlawful conduct had the following effects:  (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Florida; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During

54

the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

144.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.* Defendants' unlawful conduct had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

145.    Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Massachusetts Gen. Laws, Ch 93A, § 1, *et seq.* Defendants were engaged in trade or commerce as defined by G.L. 93A.

55

Defendants, in a market that includes Massachusetts, agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which generic pravastatin sodium were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiff and members of the Damages Class. The aforementioned conduct on the part of the Defendants constituted "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," in violation of Massachusetts Gen. Laws, Ch 93A, § 2, 11. Defendants' unlawful conduct had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected Massachusetts commerce and consumers. As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Massachusetts Gen. Laws, Ch 93A, §§ 2, 11, that were knowing or willful, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute, including multiple damages.

146.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.* Plaintiff and members of the Damages Class purchased generic

pravastatin sodium for personal or family purposes. Defendants engaged in the conduct described herein in connection with the sale of generic pravastatin sodium in trade or commerce in a market that includes Missouri. Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which generic pravastatin sodium were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class. Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for generic pravastatin sodium.   The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of generic pravastatin sodium they purchased. Defendants misrepresented the real cause of price increases and/or the absence of price reductions in generic pravastatin sodium by making public statements that were not in accord with the facts.  Defendants' statements and conduct concerning the price of generic pravastatin sodium were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing generic pravastatin sodium at prices established by a free and fair market. Defendants' unlawful conduct had the following effects:  (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Missouri; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium.   The foregoing acts and practices

constituted unlawful practices in violation of the Missouri Merchandising Practices Act. As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

147.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et. seq.* Defendants' unlawful conduct had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Montana; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants marketed, sold, or distributed generic pravastatin sodium in Montana, and Defendants' illegal conduct substantially affected Montana commerce and consumers. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been

58

injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-103, *et seq*., and §§ 30-14-201, *et. seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

148.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which generic pravastatin sodium were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiff and members of the Damages Class. The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, inter alia, resulted in a gross disparity between the value received by Plaintiff and members of the Damages Class and the prices paid by them for generic pravastatin sodium as set forth in N.M.S.A., § 57-12-2E.  Plaintiff and members of the Damages Class were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for generic pravastatin sodium.  Defendants had the sole power to set that price and Plaintiff and members of the Damages Class had no power to negotiate a lower price.  Moreover, Plaintiff and members of the Damages Class lacked any meaningful choice in purchasing generic pravastatin sodium because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff and members of the Damages Class could avoid the overcharges. Defendants' conduct with regard to sales of generic pravastatin sodium, including their illegal

conspiracy to secretly fix the price of generic pravastatin sodium at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiff and the public.  Defendants took grossly unfair advantage of Plaintiff and members of the Damages Class.  The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for generic pravastatin sodium. Defendants' unlawful conduct had the following effects:  (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers. As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

149.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.* Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which generic pravastatin sodium were sold, distributed or obtained in New York and took efforts to conceal their

agreements from Plaintiff and members of the Damages Class. Defendants and their co-conspirators made public statements about the prices of generic pravastatin sodium that either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for generic pravastatin sodium; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information. Because of Defendants' unlawful trade practices in the State of New York, New York class members who indirectly purchased generic pravastatin sodium were misled to believe that they were paying a fair price for generic pravastatin sodium or the price increases for generic pravastatin sodium were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy. Defendants knew that their unlawful trade practices with respect to pricing generic pravastatin sodium would have an impact on New York consumers and not just the Defendants' direct customers. Defendants knew that their unlawful trade practices with respect to pricing generic pravastatin sodium would have a broad impact, causing consumer class members who indirectly purchased generic pravastatin sodium to be injured by paying more for generic pravastatin sodium than they would have paid in the absence of Defendants' unlawful trade acts and practices. The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner. Defendants' unlawful conduct had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout New York; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3)

Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants marketed, sold, or distributed generic pravastatin sodium in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers. During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed generic pravastatin sodium in New York. Plaintiff and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

150.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*. Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which generic pravastatin sodium were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiff and members of the Damages Class. Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiff and members of the Damages Class could not possibly have been aware. Defendants and their co-conspirators publicly provided pretextual and false justifications regarding their price increases. Defendants' public statements concerning the price of generic pravastatin sodium created the illusion of competitive pricing controlled by market forces rather than supracompetitive pricing driven by Defendants' illegal conspiracy. Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge

the existence of the conspiracy to outsiders. The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.  Defendants' unlawful conduct had the following effects:  (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants marketed, sold, or distributed generic pravastatin sodium in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers. During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed generic pravastatin sodium in North Carolina. Plaintiff and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, et seq., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

151.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act (R.I. Gen. Laws §§ 6-13.1-1, *et seq.*) Members of this Damages Class purchased

generic pravastatin sodium for personal, family, or household purposes. Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which generic pravastatin sodium were sold, distributed, or obtained in Rhode Island. Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for generic pravastatin sodium. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' generic pravastatin sodium prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. As a direct and proximate result of the Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of generic pravastatin sodium, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing generic pravastatin sodium at prices set by a free and fair market.

Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiff and members of the Damages Class as they related to the cost of generic pravastatin sodium they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

152. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act (S.C. Code Ann. §§ 39-5-10, *et seq.*) Defendants' combinations or conspiracies had the following effects: (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

153. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at

which generic pravastatin sodium were sold, distributed, or obtained in Vermont. Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for generic pravastatin sodium. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' generic pravastatin sodium prices were competitive and fair. Defendants' unlawful conduct had the following effects:    (1) generic pravastatin sodium price competition was restrained, suppressed, and eliminated throughout Vermont; (2) generic pravastatin sodium prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for generic pravastatin sodium. As a direct and proximate result of the Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of generic pravastatin sodium, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing generic pravastatin sodium at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

## FOURTH COUNT
### Unjust Enrichment
### (on behalf of Plaintiff and the Damages Class)

154.    Plaintiff repeats the allegations set forth above as if fully set forth herein.

155.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched.  Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on generic pravastatin sodium.

156.    Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiff and members of the Damages Class for generic pravastatin sodium manufactured by Defendants during the Class Period.

157.    Plaintiff and members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiff and members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and members of the Damages Class may make claims on a *pro rata* basis

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment that:

1.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Class;

2.    That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed: (a) an unreasonable restraint of trade or commerce in violation of Section

1 of the Sherman Act; (b) a *per se* violation of Section 1 of the Sherman Act; (c) an unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and (d) acts of unjust enrichment by Defendants as set forth herein.

3.      Plaintiff and members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiff and members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

4.      Plaintiff and members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

5.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

6.      Plaintiff and members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

7.      Plaintiff and members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

8.      Plaintiff and members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

9.      Plaintiff and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Dated: December *12*, 2016          Respectfully submitted,

By: _____
Brent W. Landau
Katie R. Beran
HAUSFELD LLP
325 Chestnut St., Suite 900
Philadelphia, PA 19106
Tel: (215) 985-3270
Fax: (215) 985-3271
Email: blandau@hausfeld.com
Email: kberan@hausfeld.com

Michael P. Lehmann
Bonny E. Sweeney
Christopher L. Lebsock
Stephanie Y. Cho
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel:  (415) 633-1908
Fax: (415) 358-4980
Email:  mlehmann@hausfeld.com
Email:  bsweeney@hausfeld.com
Email:  clebsock@hausfeld.com

Michael D. Hausfeld
Jeannine M. Kenney
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
Email:   mhausfeld@hausfeld.com
Email:   jkenney@hausfeld.com

Frank R. Schirripa
Daniel B. Rehns
HACH ROSE SCHIRRIPA & CHEVERIE LLP
185 Madison Ave, 14th Floor
New York, New York 10016
Tel: (212) 213-8311
Fax: (212) 779-0028
Email: FSchirripa@hrsclaw.com
         DRehns@hrsclaw.com


*Counsel for Plaintiff*